UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAMID REZA AMERIFAR, *Plaintiff*, v. U.S. DEPARTMENT OF STATE, *et al.*, *Defendants*. | Case No. 1:23-cv-3182 (ACR) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff is an Iranian citizen who has applied for an immigrant visa to move to the United States. In February 2023, consular officers at the U.S. Embassy in Yerevan refused Plaintiff's application pending further administrative processing. After eight months without further developments, Plaintiff joined the ever-growing throng of litigants in this District challenging visa-processing delays. Plaintiff's frustration is understandable, but his Complaint does not state any plausible claims. The Court must therefore dismiss this case without prejudice.

### I. BACKGROUND

**A. Legal Background**

Certain noncitizens whose spouses have obtained lawful permanent resident status in this country may apply for immigrant visas to move to the United States. *See* 8 U.S.C. § 1153(a)(2)(A). The applicant's spouse begins the process by filing an I-130 Petition for Alien Relative with U.S. Citizenship and Immigration Services (USCIS), a subagency of the Department of Homeland Security. *See* 8 U.S.C. § 1154(a)(1)(B); 8 C.F.R. § 204.1(a)(1). If USCIS approves the petition and the applicant is outside the United States, the agency forwards the case to the State Department's National Visa Center (NVC) for processing. 8 C.F.R.

1

§ 204.2(a)(3).  The applicant must then submit additional paperwork, including a visa application form.  *See* 22 C.F.R. §§ 42.62-.63; 9 Foreign Affs. Manual § 504.1-2(b), https://fam.state.gov/ FAM/09FAM/09FAM050401.html [https://perma.cc/END7-MHKW].  Once the applicant meets those requirements, the NVC coordinates with the appropriate consulate or embassy to schedule the applicant for a required consular interview.  *See* 22 C.F.R. § 42.62; 9 Foreign Affs. Manual § 504.1-2(b)-(d).

Following the interview, the consular officer "must" generally either "issue the visa" or "refuse the visa."[1]  22 C.F.R. § 42.81(a).  If the consular officer determines that she needs additional information to determine the applicant's eligibility, she may, "in accordance with [State] Department procedures," refuse the visa pending "further administrative processing."  *Administrative Processing Information*, U.S. Dep't of State, https://travel.state.gov/content/ travel/en/us-visas/visa-information-resources/administrative-processing-information.html [https://perma.cc/6SZ5-EL3B].

  **B.**  **Factual Background**

The Court takes the facts from Plaintiff's Complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Plaintiff Hamid Reza Amerifar is an Iranian citizen.  Dkt. 1 (Compl.) ¶ 8.  His wife, Sohelia Entezari, is a U.S. lawful permanent resident.  *Id.*  In January 2019, Entezari filed an I-130 petition on Plaintiff's behalf.  *Id.* ¶ 9.  USCIS approved the petition and transferred it to the NVC in May 2020.  *See id.* ¶ 10.  Plaintiff submitted an online visa application form in August 2020, *id.* ¶ 11, and interviewed with consular officials at the U.S. Embassy in Yerevan in

---

[1] The consular officer must instead "discontinue granting the visa" if the applicant's country is subject to visa sanctions under 8 U.S.C. § 1253(d).  22 C.F.R. § 42.81(a).  No party argues that such sanctions apply to Iran.

February 2023, *id.* ¶ 12. "After the interview, Plaintiff received a notice . . . informing him that his [a]pplication had been refused for administrative processing." *Id.* ¶ 13. Consular officials "request[ed] further information," which Plaintiff submitted that same month. *Id.* ¶¶ 14-15. Plaintiff's application remains in administrative processing. *Id.* ¶ 17; Dkt. 12. He has "regularly" inquired into the status of his application but has received no "explanation or justification for the delay." Compl. ¶ 16. The wait "has caused [Plaintiff] and his wife . . . to suffer significant, ongoing harm in that they remain in legal limbo as to whether they are able to start their lives together as a married couple in the United States." Compl. ¶ 18.

    **C.**    **Procedural Background**

Plaintiff filed this case against Secretary of State Antony J. Blinken and the U.S. Department of State in October 2023. Compl. Citing both the Administrative Procedure Act (APA), 5 U.S.C. §§ 555(b), 706, and the Mandamus Act, 28 U.S.C. § 1361, the Complaint asserts that the delay in in adjudicating Plaintiff's application is unreasonable and requests an order requiring prompt adjudication. Compl. ¶¶ 29-46; *id.* at 9-10. Defendants moved to dismiss the Complaint in January 2024. Dkt. 6 (Mot.).

    **II.**    **LEGAL STANDARDS**

Defendants' Motion seeks dismissal both under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.

When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. *E.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Where, as here, "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations," *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000), the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s]

3

the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co.*, 642 F.3d at 1139 (cleaned up).

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). To meet that standard, a plaintiff's allegations must support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

### III.   ANALYSIS

Defendants argue both that Plaintiff lacks standing to sue Secretary Blinken and that the Complaint does not state any plausible claims.[2] Readers familiar with the Court's past visa-delay decisions will be unsurprised to learn that "[t]he Court rejects the first argument but agrees with the second." *Shahnia v. U.S. Dep't of State*, No. 23-cv-2337, 2024 WL 3202225, at *2 (D.D.C June 27, 2024).

#### A.   Plaintiff Has Standing to Sue Secretary Blinken

Defendants contend that Plaintiff lacks standing—which requires, among other things, "that a favorable decision will likely redress" Plaintiff's injuries, *City of Scottsdale v. FAA*, 37

---

[2] Defendants also argue that the consular nonreviewability doctrine bars Plaintiff's claims and that Defendants do not have any clear, nondiscretionary duty to act, as is necessary for a mandamus claim. Mot. at 6-18. Neither argument implicates the Court's Article III jurisdiction, and so the Court need not address them before dismissing this case on the merits. *See Rashidian v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *5 & n.5 (D.D.C. Mar. 8, 2024) (explaining why the Court may bypass these arguments).

F.4th 678, 679 (D.C. Cir. 2022) (cleaned up)—to sue Secretary Blinken because only a consular officer (and not the Secretary) can adjudicate his visa application. *See* Mot. at 5-6. "This Court, like many (though not all) others in this District, has previously rejected this argument, and it stands by that conclusion." *Shahnia*, 2024 WL 3202225, at *2. "[W]hile the Secretary . . . has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing them to decide pending applications within a reasonable time, and an order requiring him to do so would likely redress Plaintiff['s] injuries by ending the challenged delay." *Id.* (cleaned up). Plaintiff has standing.

      **B.**      **Plaintiff Has Not Stated Plausible Unreasonable-Delay Claims**

The Court turns to the merits of Plaintiff's unreasonable-delay claims under the APA and the Mandamus Act. "[T]he central question" under both statutes is "whether the agency's delay is so egregious as to warrant mandamus." *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *6 (D.D.C. Jan. 30, 2024) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

To answer that question, courts in this Circuit consider the six "*TRAC*" factors, drawn from the D.C. Circuit's decision in *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70 (D.C. Cir. 1984): (1) "[T]he time agencies take to make decisions must be governed by a rule of reason"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the court should also take into account the nature and extent

of the interests prejudiced by delay"; and (6) "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.* at 80 (cleaned up). "These considerations are often grouped into four basic inquiries":

> First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023) (cleaned up).

Conducting these four inquiries, the Court concludes that the *TRAC* factors do not plausibly point Plaintiff's way, making dismissal appropriate. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340-46 (D.C. Cir. 2023) (affirming dismissal of visa-delay case for failure to state a claim based on *TRAC* factors).

### 1. *TRAC* factors one and two

The first two factors, which consider whether the agency is following a "rule of reason," "congressionally prescribed or otherwise," *Khazaei*, 2023 WL 6065095, at *6 (cleaned up), support dismissal. Plaintiff concedes that "no congressional mandate on the time frame [sic] exists." Dkt. 7 (Opp.) at 21. As a result, the question is whether Plaintiff plausibly alleges that there is no "rhyme or reason" behind the delay. *Khazaei*, 2023 WL 6065095, at *6 (cleaned up).

Plaintiff has not done so. An agency "employs a rule of reason" when it processes immigration applications on a "first-in, first-out" basis. *Da Costa*, 80 F.4th at 340-41. Plaintiff asserts in his Opposition that "Defendants are clearly not" employing such a methodology, but he cites no allegations in the Complaint—nor any outside facts of which the Court can take

judicial notice—to support that assertion.[3]  Opp. at 19.  In the absence of such allegations, "[c]ourts in this jurisdiction often look to the length of delay as a rough yardstick to determine whether [a] 'first-in, first-out' rule is, in fact, being applied," *Khoshrou v. Blinken*, No. 22-cv-2859, 2023 WL 4930086, at *5 (D.D.C. Aug. 2, 2023); *accord, e.g.*, *Barazandeh*, 2024 WL 341166, at *8 ("Absent a congressionally supplied yardstick, courts typically turn to [case law] as a guideline." (cleaned up)).  Case law confirms that the delay here is neither unusual nor inconsistent with a rule of reason.  Visa processing inevitably "takes a baseline amount of time," and "courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Khazaei*, 2023 WL 6065095, at *6.  The delay here—roughly eighteen-and-a-half months since Plaintiff's interview—is similar to or shorter than those that courts have found reasonable in other cases involving visa applications placed in administrative processing.[4]  *See, e.g.*, *Bahrami v. Blinken*, No. 23-cv-1477, 2024 WL 3638200, at *7 (D.D.C. Aug. 2, 2024) (twenty-month delay); *Barazandeh*, 2024 WL 341166, at *7-8 (same).  The length of the delay, standing alone, thus

---

[3] Even if Plaintiff had provided support for this assertion, it would not necessarily mean that the first *TRAC* factor points his way.  A "first-in, first-out" approach is not the *only* rational way in which the agency might process applications.  After all, different "applications have different levels of complexity and present different challenges." *Jahangiri v. U.S. Dep't of State*, No. 23-cv-3029, 2024 WL 3443492, at *6 (D.D.C. July 15, 2024).  But, since Plaintiff offers nothing but bare speculation, the Court does not discuss this possibility further.

[4] Courts disagree as to the details of how to calculate delay in cases like this one—for example, whether the relevant end date is the day of the case's filing or the day of the decision. *See, e.g.*, *Dehkordi v. Bitter*, No. 22-cv-2470, 2023 WL 5651845, at *4 n.4 (D.D.C. Aug. 31, 2023).  Plaintiff emphasizes that the delay here stems from his application's placement in administrative processing and generally measures the delay from the date of his consular interview. *See, e.g.*, Opp. at 17-21.  The Court follows Plaintiff's lead in treating his interview date as the starting point and assumes, favorably to Plaintiff, that the delay runs through today.

does not support a reasonable inference that the agency is not processing applications in an orderly, rational way. The first two *TRAC* factors favor Defendants.

### 2. *TRAC* factor four

The fourth factor, "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, "carries significant weight," *Barazandeh*, 2024 WL 341166, at *9, and heavily favors Defendants. The D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting [a party] at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up). Plaintiff seeks precisely this sort of relief. "Consular processing capacity is . . . a zero-sum game, so granting [Plaintiff] relief would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own." *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *6 (D.D.C. Feb. 12, 2024) (cleaned up); *accord Da Costa*, 80 F.4th at 343-44. "Any such reordering of the queue of applicants seeking adjudication would be inappropriate . . . because there would be no demonstrable net gain in visa processing at large." *Ahmadi*, 2024 WL 551542, at *6 (cleaned up); *accord Da Costa*, 80 F.4th at 343-44.

Plaintiff replies that this analysis "assume[s] without any factual basis that . . . Plaintiff's . . . [a]pplication [is] not already at the front of the line or completely ignored by . . . Defendants." Opp. at 19 (cleaned up). If Plaintiff has already reached the front of the line, he has no need for judicial intervention. In any event, he bears the burden of alleging sufficient facts to support a "reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court has already explained why the length of the delay thus far, standing alone, cuts *against* Plaintiff's claims, *see supra* Section III.B.1, and he cites no other

allegations showing that Defendants have deprioritized his application. The fourth *TRAC* factor "weighs against judicial intervention." *Da Costa*, 80 F.4th at 344.

        **3.**      ***TRAC* factors three and five**

*TRAC* factors three and five, which examine "the interests prejudiced by the delay," including the effect on "human health and welfare," *Da Costa*, 80 F.4th at 344 (quoting *TRAC*, 750 F.2d at 80), arguably cut marginally in Plaintiff's favor but do not outweigh the other factors. Plaintiff alleges that the delay has "separated [him] from his wife" and thereby created "significant, ongoing harm," Compl. ¶ 18; Opp. at 22, and courts in this District have concluded that similar allegations tilted these factors in other plaintiffs' favor, if only narrowly, *see, e.g.*, *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 77 (D.D.C. 2022) (finding that the third and fifth *TRAC* factors "slightly" favored a visa-delay plaintiff based on an allegation that the delay "'had a profound and negative impact' on his life"). *But see Da Costa*, 80 F.4th at 344-45 (concluding that these factors did not favor visa-delay plaintiffs absent harms beyond "the uncertainty that results any time an individual must continue to wait to secure a benefit"). But, however understandable Plaintiff's distress may be, "many others facing similar circumstances" are experiencing the same harm. *Siddiqui*, 646 F. Supp. 3d at 77 (cleaned up); *accord Bahrami*, 2024 WL 3638200, at *7 ("[D]elays in visa processing separate . . . many families."). Without more pressing or unusual injuries, *TRAC* factors three and five do not warrant interfering with the agency's priorities and placing Plaintiff at the front of the line. *See Da Costa*, 80 F.4th at 344-45.

        **4.**      ***TRAC* factor six**

The sixth *TRAC* factor—whether "any impropriety lurk[s] behind agency lassitude," *TRAC*, 750 F.2d at 80 (cleaned up)—does not favor either side. Plaintiff acknowledges that he

9

"has not alleged any impropriety." Opp. at 24. Because the Court "need not find any [impropriety] in order to hold that agency action is unreasonably delayed," this factor is neutral. *Da Costa*, 80 F.4th at 345-46 (cleaned up).

\* \* \*

The *TRAC* factors do not plausibly point Plaintiff's way, and his unreasonable-delay claims therefore fail.

## IV. CONCLUSION AND ORDER

The Court sympathizes with Plaintiff's situation, but his Complaint does not state plausible unreasonable-delay claims. The Court therefore dismisses this case.

For these reasons, the Court hereby **GRANTS** Defendants' Motion to Dismiss, Dkt. 6; **DISMISSES** Plaintiff's Complaint, Dkt. 1, and this case without prejudice; and **DIRECTS** the Clerk of Court to close this case.

**SO ORDERED.**

This is a final appealable Order. *See* Fed. R. App. P. 4(a).

Date:   August 22, 2024

_____
ANA C. REYES
United States District Judge